IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| PAUL M. BRUNHAMMER, | ) |
|---|---|
| Plaintiff, | ) ) ) |
| v. | ) Civ. Action No. 15-864-GMS ) |
| JACK A. MARKELL, et al., | ) ) |
| Defendants. | ) |

**MEMORANDUM**

The plaintiff, Paul M. Brunhammer ("Brunhammer"), a New Jersey inmate at the Adult Diagnostic & Treatment Center ("ADTC") in Avenel, New Jersey, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] (D.I. 1.) He appears *pro se* and was granted permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (D.I. 7.) The court proceeds to review and screen the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1).

**I. BACKGROUND**

Brunhammer is currently serving a sentence in the State of New Jersey with a maximum sentence release date of January 20, 2016. Brunhammer was arrested in New Jersey on February 8, 2010. His father was arrested the same day, and they were both housed at the Salem County Correctional Facility ("SCCF") in New Jersey. An order to keep them separate resulted in Brunhammer's transfer to the Camden County Correctional Facility ("CCCF") on February 25, 2010. Brunhammer was sentenced on September 21, 2010, and transferred to the New Jersey Department of Corrections ("NJDOC") on October 11, 2010.

---

[1] When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Brunhammer alleges that unbeknownst to him, on October 11, 2010, the Superior Court for the State of Delaware, in and for New Castle County ("Superior Court") issued a warrant for his arrest and an authorization for extradition. (D.I. 6, Pa-14.) On October 27, 2010, the Superior Court issued and mailed a summons to the Camden County Jail for Brunhammer's arraignment scheduled for November 5, 2010. (*Id.* at Pa-14, Pa-17.) Brunhammer alleges that the mailed summons was returned by CCCF. It was received by the Superior Court with the notation "attempted not known or insufficient address." (*Id.* at Pa-14.) Brunhammer alleges that he was unable to attend the arraignment because a request for transport was not issued to the NJDOC. Brunhammer alleges that the Superior Court is under the control of Griffin, the Delaware State Court Administrator.

An August 17, 2015 memo to Brunhammer from the ADTC Classification Officer notified him that detainers were lodged against him. (D.I. 6, Pa-35.) On August 19, 2015, he was notified by Social Services at ADTC that he was indicted in the State of Delaware on October 11, 2010 on multiple charges related to an alleged sexual assault. Also on August 19, 2015, Brunhammer received a notice of untried indictment, information or complaint and of right to request disposition. (*Id.* at Pa-33.) After notification of the indictment, Brunhammer obtained paperwork from the Superior Court that included an authorization for extradition, dated September 28, 2010, for Paul Brunhammer with a NJDOC prisoner identification of NJ SBI # 466601E. (*Id.* at Pa-22.) Brunhammer states that NJ SBI # 466601E belongs to his father; Brunhammer's number is NJ SBI # 566735E. Brunhammer alleges that, regardless of the incorrect number, the form indicates that the State of Delaware was aware of his location and knew that he was incarcerated within the NJDOC. Brunhammer made inquiry to the SCCF and,

on August 28, 2015, was advised by its classification department that when he arrived at SCCF on February 8, 2010, a check was conducted that day "which came up none for detainers." (*Id.* at 6 at Pa-38.) The classification supervisor indicated that would have been the only time it would have checked for wants and warrants because the classification department does not conduct a "wants and warrant check on people prior to them being transferred to State Prison" and "on return visits to attend court [it does] not check for wants or warrants on State Remands." (*Id.*)

Brunhammer alleges he has been wanted on a warrant in the State of Delaware since October 11, 2010, but neither the court system nor the Delaware State Police made a diligent effort to locate him. He alleges that the Delaware State Police contacted him in 2011 or 2011 regarding another matter, had an opportunity to inform him of the arrest warrant, but did not. Brunhammer alleges that counsel was not assigned to the case at its inception, investigation is essential when charged with such a crime, and the investigation should not have been allowed to "go cold" for five years without notification to him. In addition, he alleges that once the detainer was filed he is in Delaware's custody and cannot be released from his NJDOC sentence until he is either picked up by the State of Delaware or the State of Delaware drops the detainer against him.

Brunhammer alleges the defendants Delaware Governor Jack A Markell ("Markell"), New Jersey Governor Christopher J. Christie ("Christie"), Delaware State Court Administrator Patricia Walther Griffin ("Griffin"), Delaware State Police Superintendent Colonel Nathaniel McQueen, Jr. ("McQueen"), NJDOC Commissioner Gary M. Lanigan ("Lanigan"), ADTC Administrator Sherry Yates ("Yates"), ADTC Chief Classification Officer Adelle Aroneo ("Aroneo"), and the CCCF violated his constitutional rights to effective assistance of counsel, a

speedy trial, and due process, all of which will lead to unconstitutional detainment and violation of his right to equal protection.

More particularly, Brunhammer alleges that Markell has a duty to ensure that all laws, statutes, bill, policies, or codes formed and enforced in the State of Delaware conform to the rights provided in the United States Constitution. He also alleges that Markell has a duty to ensure that all persons suspected of a crime in the State of Delaware are brought to justice in a timely fashion that ensures all constitutional protections are preserved as much as possible.

Brunhammer alleges that Christie, Lanigan, Yates, and Aroneo have the duty of ensuring that all laws, statutes, and administrative codes in the State of New Jersey conform to the federal constitution and, in particular, N.J. Admin. Code § 10A:9-3.5 and § 10A:9-3.14 regarding classification of inmates. In addition, he alleges that it is the institutional classification department's responsibility to check for detainers prior to an inmate's change in custody status. Finally, Brunhammer alleges that CCCF has a responsibility to forward any warrants/detainers lodged against an inmate, currently or previously in its custody, who is transferred to a state prison to the appropriate officials at the state classification office.

Brunhammer seeks injunctive relief against the State of Delaware to enjoin it from further prosecution against him, as well as compensatory and punitive damages. He has also filed two motions for injunctive relief (D.I. 3, 9),[2] a request for counsel (D.I. 4), and a motion for an order for service of the complaint (D.I. 5).

---

[2]Except for their captions, the motions are identical. Docket item 3 is titled in the United States District Court for the District of New Jersey and docket item 9 is titled in the United States District Court for the District of Delaware.

4

## II. STANDARD OF REVIEW

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Because Brunhammer proceeds *pro se*, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. at 94 (citations omitted).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989); *see, e.g., Deutsch v. United States*, 67 F.3d 1080, 1091-92 (3d Cir. 1995) (holding frivolous a suit alleging that prison officials took an inmate's pen and refused to give it back).

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule

5

12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state a claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the court must grant Brunhammer leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346. When determining whether dismissal is appropriate, the court must take three steps: "(1) identify[] the elements of the claim, (2) review[] the complaint to strike conclusory allegations, and then (3) look[] at the well-pleaded components of the complaint and evaluat[e] whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### III. DISCUSSION

#### A. Interstate Agreement on Detainers Act

Brunhammer alleges violations of his constitutional rights, pursuant to 42 U.S.C. § 1983

6

by reason of the failure of the defendants to inform him of an outstanding warrant and delay in lodging detainers against him. The Interstate Agreement on Detainers Act ("IAD") is an interstate compact entered into by the majority of states, including Delaware and New Jersey, for the purposes of "creat[ing] uniform procedures for resolving one State's pending charges against an individual imprisoned by another State." *United States v. Hornick*, 491 F. App'x 277, 281-82 (3d Cir. 2012) (citing *Alabama v. Bozeman*, 533 U.S. 146, 148 (2001)); *see also* 18 U.S.C. App. 2 at § 2. Article III of the IAD extends to "person[s] . . . enter[ing] upon a term of imprisonment in a penal or correctional institution of a party State," and against whom a detainer is lodged by another state, the right to demand final disposition on the pending charges within 180 days of release to the charging jurisdiction unless good cause exists for a continuance. 18 U.S.C. App. 2 at § 2, Art. III(a). This provision aims to protect a prisoner with outstanding detainers and to preserve a prisoner's ability to present an effective trial, receive a speedy trial, and participate in treatment and rehabilitation programs. *Cuyler v. Adams*, 449 U.S. 433, 449 (1981); *Rhodes v. Schoen*, 574 F.2d 968, 969 (8th Cir. 1978).

The IAD imposes obligations upon prison officials to assist in the orderly and efficient transfer of prisoners for disposition of out-of-state detainers. Upon learning of a detainer lodged against a prisoner in their custody, the official having custody of a prisoner "shall promptly inform [the prisoner] of the source and contents of any detainer lodged against him and . . . of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." 18 U.S.C. App. 2 at § 2, Art. III(c). The IAD further provides that "[a]ny request for final disposition made by a prisoner . . . shall operate as a request for final disposition of all untried indictments, informations, or complaints . . . The warden,

7

commissioner of corrections, or other official having custody of the prisoner shall forthwith notify all appropriate prosecuting officers and courts in the several jurisdictions within the State to which the prisoner's request for final disposition is being sent of the proceeding being initiated by the prisoner." *Id.* at § 2, Art. III(d).

As a statute of the United States, violations of the IAD are redressable under § 1983, but only in certain situations. *See Cuyler*, 449 U.S. at 450; *see also Shack v. Attorney Gen. of the State of Pennsylvania*, 776 F.2d 1170, 1173-74 (3d Cir. 1985); *Rhodes*, 574 F.2d at 970 (requiring merely general compliance with IAD). For example, the denial of a pre-transfer hearing, which is guaranteed by the IAD, is a breach of prisoner's due process rights. *Cuyler*, 449 U.S. at 449. Conversely, a two month delay in the forwarding of a final disposition request does not create a § 1983 cause of action as long as plaintiff was afforded his procedural due process guarantees, such as a pre-transfer hearing and a speedy trial. *Rhodes*, 574 F.2d at 970.

### B. Respondeat Superior

Brunhammer has named Markell, Griffin, McQueen, Christie, Lanigan, Yates, and Aroneo as defendants based upon their supervisory positions. Government officials "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. State actors are under § 1983 liable only for their own unconstitutional conduct. *Bistrian v. Levi*, 696 F.3d 352, 366 (3d Cir. 2012). A plaintiff must allege "personal direction" or "actual knowledge and acquiescence." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Brunhammer does not allege that the foregoing defendants were personally responsible for his alleged constitutional injuries. Rather, he alleges

that the foregoing defendants were derelict in their duty to protect his constitutional rights. In essence, Brunhammer alleges that they are liable for improperly supervising those directly responsible for his injuries. Such allegations are not sufficient to state a claim. Therefore, the court will dismiss the claims against Markell, Griffin, McQueen, Christie, Lanigan, Yates, and Aroneo as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

### C. CCCF

The last named defendant is CCCF. A county jail, however, is not a "person" subject to suit under § 1983. *See Boomer v. Lewis*, 541 F. App'x 186, 192 (3d Cir. 2013) (Pike County Correctional Facility "is not a 'person' within the meaning of 42 U.S.C. § 1983.") (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)). Therefore, the court will dismiss the claims against CCCF as legally frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and § 1915A(b)(1).

## IV. MISCELLANEOUS MOTIONS

### A. Motions for a Preliminary Injunction

Brunhammer seeks an order barring any and all future prosecution of him in the State of Delaware. (D.I. 3, 9.) In order to be granted a temporary restraining order or preliminary injunction, a plaintiff must demonstrate, the likelihood of success on the merits. *Maldonado v. Houstoun*, 157 F.3d 179, 184 (3d Cir. 1998). Brunhammer cannot demonstrate the likelihood of success in seeking injunctive relief because, except in rare instances not present here, the court must abstain from the issuance of injunctions directed to state court criminal prosecutions.

Pursuant to the doctrine developed in *Younger v. Harris*, 401 U.S. 37 (1971), "federal courts should abstain from enjoining state criminal prosecutions because of principles of comity

and federalism, unless certain extraordinary circumstances exist." *Marran v. Marran*, 376 F.3d 143, 154 (3d Cir. 2004). In addition, comity concerns are implicated by a request to enjoin state court criminal proceedings. *See Gonzalez v. Waterfront Comm'n of the N.Y. Harbor*, 755 F.3d 176, 180 (3d Cir. 2014) ("In *Younger*, the Supreme Court held that absent a showing of bad faith or an intent to harass, federal courts should decline requests to enjoin state criminal prosecutions, 'particularly . . . when the moving party has an adequate remedy in state court.'") (internal citations and quotations omitted).

In the instant case, Brunhammer's ongoing state court proceedings are penal in nature. His allegations concern additional alleged violations of rights that will be caused by the continuance of his criminal prosecution and, therefore, his motions squarely implicate the comity and federalism concerns Younger abstention prevents.

To the extent Brunhammer will be harmed by the continuance of his criminal prosecution in the Superior Court, he has adequate remedies in that state forum to prevent the violation of his rights. Therefore, the court will deny the motions for a preliminary injunction.

### B. Request for Counsel

Brunhammer requests counsel on the grounds that: (1) the case deals with complex constitutional issues that challenge the constitutionality of actions of multiple state officials in New Jersey and Delaware; (2) he is in incarcerated and does not have access to Delaware statutes and codes; (3) he does not possess the requisite legal knowledge to effectively prosecute this action; and (4) counsel will be more effective and less burdensome to the court than a *pro se* plaintiff and will make all proceedings more expedient. (D.I. 4.)

A *pro se* litigant proceeding *in forma pauperis* has no constitutional or statutory right to representation by counsel.³ *See Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011); *Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993). However, representation by counsel may be appropriate under certain circumstances, after a finding that a plaintiff's claim has arguable merit in fact and law. *Tabron*, 6 F.3d at 155.

After passing this threshold inquiry, the court should consider a number of factors when assessing a request for counsel. Factors to be considered by a court in deciding whether to request a lawyer to represent an indigent plaintiff include: (1) the merits of the plaintiff's claim; (2) the plaintiff's ability to present his or her case considering his or her education, literacy, experience, and the restraints placed upon him or her by incarceration; (3) the complexity of the legal issues; (4) the degree to which factual investigation is required and the plaintiff's ability to pursue such investigation; (5) the plaintiff's capacity to retain counsel on his or her own behalf; and (6) the degree to which the case turns on credibility determinations or expert testimony. *See Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002); *Tabron*, 6 F.3d at 155-56. The list is not exhaustive, nor is any one factor determinative. *Tabron*, 6 F.3d at 157.

Assuming, solely for the purpose of deciding this motion, that Brunhammer's claims have merit in fact and law, several of the *Tabron* factors militate against granting his request for counsel. After reviewing the request, the court concludes that the case is not so factually or legally complex that requesting an attorney is warranted. To date, the filings in this case demonstrate Brunhammer's ability to articulate his claims and represent himself. In addition, the

---

³*See Mallard v. United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296 (1989) (§ 1915(d) (now § 1915(e)(1)) does not authorize a federal court to require an unwilling attorney to represent an indigent civil litigant, the operative word in the statute being "request.").

complaint as it now stands, does not raise cognizable claims. Thus, in these circumstances, the court will deny without prejudice to renew Brunhammer's request for counsel. (D.I. 4.) Should the need for counsel arise later, one can be appointed at that time.

### C. Motion for Service Order

Brunhammer moves for an order for service of the defendants named in the complaint. (D.I. 5.) As discussed above, the complaint fails to state cognizable claims against the defendants. Therefore, the motion will be denied as premature.

## V. CONCLUSION

For the above reasons, the court will dismiss the complaint as legally frivolous pursuant to 28 U.S.C. §§1915(e)(2)(B)(i) and 1915A(b)(1). However, since it appears plausible that Brunhammer may be able to articulate a claim against the defendants (or name alternative defendants), he will be given an opportunity to amend his pleading. *See O'Dell v. United States Gov't*, 256 F. App'x 444 (3d Cir. 2007) (leave to amend is proper where the plaintiff's claims do not appear "patently meritless and beyond all hope of redemption"). In addition, the court will deny the motions for a preliminary injunction (D.I. 3, 9), the request for counsel (D.I. 4), and the motion for a service order (D.I. 5).

An appropriate order will be entered.

\_\_Nov 19\_\_, 2015
Wilmington, Delaware

UNITED STATES DISTRICT JUDGE